IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| BLACKBIRD TECH LLC d/b/a<br>BLACKBIRD TECHNOLOGIES,<br><br>Plaintiff,<br><br>v.<br><br>ADVANCED DISCOVERY INC.,<br><br>Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | C.A. No. 16-413-GMS |
| BLACKBIRD TECH LLC d/b/a<br>BLACKBIRD TECHNOLOGIES,<br><br>Plaintiff,<br><br>v.<br><br>SYSTEM ONE HOLDINGS, LLC,<br><br>Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | C.A. No. 16-414-GMS |
| BLACKBIRD TECH LLC d/b/a<br>BLACKBIRD TECHNOLOGIES,<br><br>Plaintiff,<br><br>v.<br><br>DISCOVERYREADY LLC,<br><br>Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | C.A. No. 16-415-GMS |

| | |
|---|---|
| BLACKBIRD TECH LLC d/b/a<br>BLACKBIRD TECHNOLOGIES,<br><br>    Plaintiff,<br><br>v.<br><br>EVD, INC.,<br><br>    Defendant. | C.A. No. 16-416-GMS |
| BLACKBIRD TECH LLC d/b/a<br>BLACKBIRD TECHNOLOGIES,<br><br>    Plaintiff,<br><br>v.<br><br>INNOVATIVE DISCOVERY LLC,<br><br>    Defendant. | C.A. No. 16-417-GMS |
| BLACKBIRD TECH LLC d/b/a<br>BLACKBIRD TECHNOLOGIES,<br><br>    Plaintiff,<br><br>v.<br><br>KCURA LLC,<br><br>    Defendants. | C.A. No. 16-418-GMS |
| BLACKBIRD TECH LLC d/b/a<br>BLACKBIRD TECHNOLOGIES,<br><br>    Plaintiff,<br><br>v.<br><br>LDISCOVERY, LLC,<br><br>    Defendant. | C.A. No. 16-419-GMS |

| | |
|---|---|
| BLACKBIRD TECH LLC d/b/a ) <br> BLACKBIRD TECHNOLOGIES, ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> TRANSPERFECT, INC., ) <br> ) <br> Defendant. ) | C.A. No. 16-420-GMS |
| BLACKBIRD TECH LLC d/b/a ) <br> BLACKBIRD TECHNOLOGIES, ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> UNITEDLEX CORPORATION, ) <br> ) <br> Defendant. ) | C.A. No. 16-421-GMS |
| BLACKBIRD TECH LLC d/b/a ) <br> BLACKBIRD TECHNOLOGIES, ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> XACT DATA SERVICES, INC., ) <br> ) <br> Defendant. ) | C.A. No. 16-422-GMS |

## MEMORANDUM

### I. INTRODUCTION

On June 7, 2016, plaintiff Blackbird Tech LLC d/b/a Blackbird Technologies' ("Blackbird") initiated patent infringement lawsuits against kCura LLC and nine of its channel resellers, Advanced Discovery Inc., System One Holdings, LLC, DiscoverReady LLC, EVD, Inc., Innovative Discovery LLC, LDiscovery, LLC, TransPerfect Document Management, Inc., UnitedLex Corporation, Xact Data Services, Inc. (collectively, "kCura"). Blackbird alleges that

kCura infringes U.S. Patent No. 7,809,717 ("the '717 patent"). Presently before the court is kCura's motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). (D.I. 11.) kCura argues that the '717 patent claims patent ineligible subject matter and is therefore invalid under 35 U.S.C. § 101. For the reasons discussed below, the court will grant-in-part and deny-in-part kCura's motion to dismiss.

## II. BACKGROUND

The '717 patent—entitled "Methods and Apparatus for Concept-Based Visual Presentation of Search Results"—describes a method and a system for conducting a search based on a search query and then sorting the search results according to a relevance criteria. '717 patent, col. 1 l. 5. The '717 patent recites thirty claims, with two independent claims. Claim 1 recites:

> A computer implemented method of displaying search results, the computer comprising at least one processor for executing computer readable instructions stored in a memory, the method comprising:
> 
> > receiving at the computer a search query containing at least one of search term to conduct a search of a plurality of computer readable documents;
> > 
> > obtaining search results comprising a first document and second document based on the at least one search term of the search query;
> > 
> > determining at least one concept related to the search query by matching the at least one search term to the at least one concept in a concept knowledge base;
> > 
> > evaluating the similarity between the first and second documents and the at least one concept by determining an accordance value indicating a similarity between the first and second documents and the at least one concept by:
> > 
> > determining a first accordance value by evaluating the similarity between the first returned document and the at least one concept; and
> > 
> > determining a second accordance value by evaluating the similarity between the second returned document and the at least one concept; and
> > 
> > displaying the first returned document and second returned document sorted in an order based on the first accordance value and the second accordance value.

4

Claim 16 recites:

> A data processing system for displaying search results comprising:
> at least one processor;
> a memory operatively coupled to the at least one processor;
> a display device operative to the display data; and
> a program module stored in the memory and operative for
>     providing instructions to the at least one processor, the at
>     least one processor responsive to the instructions of the
>     program module, the program module operative for:
> receiving a search query containing at least one search term
>     to conduct a search of a plurality of computer readable
>     documents;
> obtaining search results comprising a first returned document
>     and a second returned document on the at least one search
>     term of the search query;
> determining at least one concept related to the search query by
>     matching the at least one search term to the at least one concept
>     in a concept knowledge base;
> evaluating the similarity between a returned document and
>     at least one concept to determine an accordance value by
>     evaluating the similarity between the first returned document
>     and the at least one concept and a second accordance value by
>     evaluating the similarity between the second returned
>     document and the at least one concept; and
> displaying the first returned document and second returned
>     document sorted in an order based on the first accordance value
>     and the second accordance value.

The remaining twenty-eight dependent claims add limitations relating to the implementation of the aforementioned method and system, such as describing a knowledge base that describes a relationship between search results, obtaining search results, and search result evaluation.

### III. LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(6) provides for dismissal where the plaintiff "fail[s] to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). In considering a motion to dismiss, the court "accept[s] all factual allegations as true, construe[s] the complaint in the light most favorable to the plaintiff, and determine[s] whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Phillips v. Cnty. of Allegheny*, 515 F.3d

5

224, 233 (3d Cir. 2008). Plaintiffs must provide sufficient factual allegations "to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). "At the motion to dismiss stage a patent claim can be found directed towards patent-ineligible subject matter if the *only* plausible reading of the patent must be that there is clear and convincing evidence of ineligibility." *Tuxis Techs., LLC v. Amazon.com, Inc.*, No. 13-1771-RGA, 2014 WL 4382446, at *2 (D. Del. Sept. 3, 2014).

Section 101 describes the general categories of patentable subject matter: "Whoever invents or discovers any new and useful process, machine, manufacture, or composition of matter, or any new and useful improvement thereof, may obtain a patent therefor, subject to the conditions and requirements of this title." 35 U.S.C. § 101. These broad classifications are limited, however, by exceptions. "Laws of nature, natural phenomena, and abstract ideas are not patentable." *Alice Corp. Pty. V. CLS Bank Int'l*, 134 S. Ct. at 2354 (quoting *Ass'n for Molecular Pathology v. Myriad Genetics, Inc.*, 133 S. Ct. 2107, 2216 (2013)). Courts have eschewed bright line rules circumscribing the contours of these exceptions. *See id.* ("[W]e tread carefully in construing this exclusionary principle lest it swallow all of patent law. At some level, all inventions . . . embody, use, reflect, rest upon, or apply laws of nature, natural phenomena, or abstract ideas.") (internal citation and quotations marks omitted). The Supreme Court's decision in *Alice* reaffirmed the framework first outlined in *Mayo Collaborative Services v. Prometheus Laboratories, Inc.*, 132 S. Ct. 1289 (2012), used to "distinguish[] patents that claim laws of nature, natural phenomena, and abstract ideas from those that claim patent-eligible applications of those concepts." *See Alice*, 134 S. Ct. at 2355.

> First, we determine whether the claims at issue are directed to one of those patent-ineligible concepts. If so, we then ask, what else is there in the claims before us? To answer that question, we consider the elements of each claim both individually and as an ordered combination to determine whether the additional elements transform the nature of the claim into a patent-eligible application. We have described step two of this analysis as a search for an "inventive concept"—*i.e.*, an element or combination of elements that is sufficient to ensure that the patent in practice amounts to significantly more than a patent upon the ineligible concept itself.

*Id.* (internal citations, quotations marks, and alterations omitted). Thus, the court must determine (1) if the patented technology touches upon ineligible subject matter, and (2) whether there are sufficient inventive elements such that the invention is "'significantly more' than a patent on an ineligible concept." *See DDR Holdings, LLC v. Hotels.com, L.P.*, 773 F.3d 1245, 1255 (Fed. Cir. 2014) (quoting *Alice*, 134 S. Ct. at 2355); *see also Intellectual Ventures I LLC v. Capital One Bank (USA)*, No. 2014-1506, 2015 WL 4068798, at *2 (Fed. Cir. July 6, 2015); *OIP Techs., Inc. v. Amazon.com, Inc.*, 788 F.3d 1359, 1362 (Fed. Cir. 2015). "[A]n invention is not rendered ineligible for patent simply because it involves an abstract concept." *Alice*, 134 S. Ct. at 2354.

## IV. DISCUSSION

Blackbird contends that it is procedurally improper to adjudicate this § 101 challenge before claim construction or further fact finding. (D.I. 16 at 20.) While in some cases claim construction and discovery may be necessary to fully understand the claimed invention, there is no rule requiring that courts wait until a certain stage of litigation before addressing patent-eligible subject matter. And it is not uncommon for courts to rule on § 101 motions at the pleading stage. *See OIP Techs*, 788 F.3d 1359 (Fed. Cir. 2015) (affirming District Court's grant of judgment on the pleadings based on § 101 invalidity); *buySAFE, Inc. v. Google, Inc.*, 765 F.3d 1350 (Fed. Cir. 2014) (same); *Money Suite Co. v. 21st Century Ins. & Fin. Servs., Inc.*, No. 13-1747-GMS, 2015 WL 436160 (D. Del. Jan. 27, 2015) (granting the defendants' joint motion to dismiss based on §

101 invalidity). As Blackbird has failed to identify any specific claim construction issues that could impact the analysis, the court considers it appropriate to do so in the case at bar.

The court applies the two-step framework outlined in *Alice* to the '717 patent. In doing so, the court finds that claims 1, 10, 16, and 25 of the '717 Patent are invalid under § 101, as they claim the abstract concept of conducting a search and sorting the search results without providing meaningful limitations to make the idea patent eligible.[1]

### A. <u>Abstract Idea</u>

The court finds that the claims of the asserted patent are drawn to the steps of 1) conducting a search based on a search query, 2) determining a concept associated with a search query, 3) and then ranking the search results based on which documents are most relevant to that concept. (D.I. 12 at 10.) These are merely "generalized steps to be performed on a computer using conventional computer activity" and therefore an abstract idea. *See VideoShare, LLC v. Google, Inc.*, C.A. No 13-990-GMS, 2016 WL 4137524 at *4 (D. Del. Aug. 2, 2016). Humans have long been capable of sorting and organizing data, and using a computer to automate this concept is abstract. *See* '717 patent, col. 1 ll. 45-65. A computer may expedite the process of parsing through a large number of documents compared to humans, but that does not make the idea patent eligible. *See, e.g., Intellectual Ventures I LLC v. Capital One Bank (USA)*, 792 F.3d 1363, 1370 (Fed. Cir. 2015) ("[O]ur precedent is clear that merely adding computer functionality to increase the speed or efficiency of the process does not confer patent eligibility on an otherwise abstract idea.")

---

[1] As a threshold issue, Blackbird contends that the validity of claims 2-9, 11-15, 17-24, and 26-30 should be upheld because defendants failed to carry their burden of establishing a representative claim. (D.I. 16 at 8) (citing *JSDQ Mesh Techs. LLC v. Fluidmesh Networks, LLC*, No. 16-cv-212-GMS, 2016 WL 4639140, at *2 (D. Del. Sept. 6, 2016)) ("Defendant bears the burden to demonstrate that its asserted Section 101 defense is well taken as to each claim.") Although kCura conducted a thorough analysis of each of the "specifically asserted claims of the '717 patent, it undisputedly failed to identify a representative claim. Because Blackbird has properly raised the representative claim issue, the court concludes that kCura cannot meet is burden of establishing the § 101 defense with respect to each of the twenty-six dependent claims that were not addressed in the briefing.

Blackbird's arguments to the contrary are unpersuasive. Initially, Blackbird accuses kCura of oversimplifying the invention by ignoring the technical elements. (D.I. 16 at 10.) Specifically, Blackbird asserts that kCura has failed to see that the search query is composed of "at least one search term"; search results are obtained "based on the at least one search term"; concept search is determined "by matching the at least one search term to the at least one concept in a concept knowledge base"; evaluating similarity by "determining... accordance value[s]"; and displaying the final sorted results. (*Id.* at 11) (citing '717 patent, claims 1 & 16). A bedrock principle under *Alice* step one involves distilling claims to their basic concepts to determine whether they are directed to abstract ideas. *See VideoShare*, 2016 WL 4137524, at *5. Even considering the detailed claim elements, these steps merely show that a user needs at least one term to perform a search and sort as per the '717 patent. This does not add a meaningful limitations to make the '717 patent's subject matter patent-eligible. *See, e.g., Elec. Power Grp., LLC v. Alstom S.A.*, 830 F.3d 1350, 1353 (Fed. Cir. 2016) (finding claims focused "on collecting information, analyzing it, and displaying certain results of the collection and analysis" directed to an abstract idea).

Moreover, Blackbird argues that the '717 patent claims solve the "inherently technical problem" of how to deal with a high volume of search results. (D.I. 16 at 11-12.) Using a generic computer, however, to solve a volume problem related to search results is a patent-ineligible subject, particularly when the patent lacks specific limitations to address the volume problem. *See Intellectual Ventures I LLC v. Symantec Corp.*, No. 2015-1769, slip op. at 13 (Fed. Cir. Sep. 30, 2016). Thus, the court concludes that the '717 patent is directed to an abstract idea.

## B. **Inventive Concept**

Not all patents directed to abstract ideas are patent-ineligible under § 101. Therefore, although the '717 patent recites an abstract idea, it will not be found invalid if there is evidence of

9

an inventive concept or contribution: "an element or combination of elements that is sufficient to ensure that the patent in practice amounts to significantly more than a patent upon the ineligible concept itself." *See Alice*, 134 S. Ct. at 2355. However, drawing a line between patent-eligible and patent-ineligible manifestations of abstract ideas is often difficult. *See DDR Holdings*, 773 F.3d at 1255. Nonetheless, the recitation of "well-understood, routine, conventional activities," previously known to the industry, is insufficient to "transform the claimed abstract idea into a patent-eligible application. *OIP Techs.*, 788 F.3d at 1363 (internal quotation marks and alterations omitted) (quoting *Alice*, 134 S. Ct. at 2359).

The court is convinced that the '717 patent fails to claim an inventive contribution sufficient to satisfy § 101. As kCura argues, each of the specifically asserted claims of the '717 patent lacks meaningful limitations to transform the abstract idea into patent-eligible subject matter. The court is unable to discern the inventive contribution to the art made by claims that merely provide for conducting a search, determining a concept associated with the search, ranking the search results, and then displaying the results. Rather, the claims recite generic computer components such as "processing unit," a "memory," and a "display device" to perform the very same sorting and rankings steps that humans can perform using pen and paper.[2] In support of its motion, kCura asserts that the problem the '717 patent was attempting to solve was not unique to a computer environment or the Internet. (D.I. 12 at 14.) While Blackbird seeks to characterize the claimed invention as specific to computers, (D.I. 16 at 11-12), the specification notes that human beings have always been capable of sorting and ranking documents; though not as efficiently as a computer when a large set of documents is involved. '717 patent, col. 1 ll. 45-65.

---

[2] Blackbird's reliance on *BASCOM Global Internet Services, Inc. v. AT&T Mobility LLC,* 827 F.3d 1341 (Fed. Cir. 2016) is unavailing. Unlike the claims in *BASCOM*, which required a "particular arrangement of elements" that constituted "a technical improvement over prior art ways of filtering" Internet content, the present claims simply require generic computer components arranged in a conventional way. 827 F.3d at 1350.

Blackbird argues that the "concept knowledge base" and "accordance value[s]" recited in claims 1 and 16, and "vector-related elements" recited in claims 10 and 25 are "technical components" that sufficiently transform the claims' abstract idea into patent-eligible subject matter. (D.I. 16 at 15-18.) These limitations—either individually or as an ordered combination—fail to transform the claims into patent-eligible subject matter. First, Blackbird argues that "concept knowledge base" is a technological component in the claims that aids in expediting the ranking of search results. (D.I. 16 at 17.) The court is not persuaded. Implementing an abstract idea on a generic computer is not enough. Librarians have routinely used reference cards and other aides to organize books and documents based on their genre and concepts. The '717 patent itself puts the lie to Blackbird's contention by recognizing that the "data structure containing the concept knowledge base can be *manually construct[ed]*." '717 Patent, col. 6 ll. 14-15 (emphasis added).

Second, the "accordance values" indicate the similarity between two documents and one concept, without any requirement of how that similarity is determined. (D.I. 19 at 7.) Third, the "vector-related elements," as described in the claims, undisputedly rely on "fuzzy logic" for ranking the search results, and fuzzy logic is based on mathematical equations that have been used since the 1960's.[3] (D.I. 16 at 7; D.I. 19 at 7 n.5.) Hence, the use of these routine mathematical formulas and operations does not add a meaningful limitation to transform the abstract idea embodied in the '717 patent into patent-eligible subject matter.

Finally, Blackbird maintains that "the claims of the '717 patent at issue do not preempt the field of searching electronic documents, or even the narrow field of searching such documents via keyword and concept search." (D.I. 16 at 18.) *Alice* did, indeed, discuss preemption at length

---

[3] Blackbird maintains that claim 25 recites "unique technological aspects" by "measuring the numerical distance between the concept and document vectors" (the "fuzzy membership score). (D.I. 16 at 11.) As explained above, this argument is unconvincing.

11

when it established its two-step analytical framework. In this instance, however, the court need not trouble itself with preemption. *See Money Suite Co. v. 21st Century Ins. & Fin. Servs., Inc.*, 2015 WL 436160, at *5 (D. Del. Jan. 27, 2015) ("[A]lthough courts have framed the 'second-step' analysis in terms of preemption, there is no rule that ideas that do not preempt an entire field are *per se* patent eligible. Rather, the test as articulated by *Alice* is that there must be an inventive contribution on top of the underlying abstract idea."). Without an inventive concept, the aforementioned claims of the '717 patent fail under *Alice*, regardless of the scope of preemption.

**CONCLUSION**

The court finds that claims 1, 10, 16, and 25 of the '717 patent are not eligible for patent protection under 35 U.S.C. § 101, and therefore kCura's motion is granted as to those claims. (D.I. 11.) The court denies the motion without prejudice as to the remaining claims of the '717 patent.

Dated: June 26, 2017

UNITED STATES DISTRICT COURT